**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                                                :
CHARLES FERRERAS,                               :
                                                :          CIVIL ACTION
                          Petitioner            :
                                                :          NO. 11-7136
        v.                                      :
                                                :
STEVEN A. GLUNT, et. al.,                       :
                                                :
                          Respondents           :
_____:

### REPORT AND RECOMMENDATION

**Henry S. Perkin, M.J.**                                    **May 10, 2012**

      Presently before the Court is the <u>pro se</u> Petition for Writ of Habeas Corpus[1] filed

by Charles Ferreras ("Petitioner") pursuant to 28 U.S.C. section 2254.  The Response to Petition

for Writ of Habeas Corpus was filed February 29, 2012.

      By order of November 28, 2011, the matter was assigned to the undersigned for

preparation of a Report and Recommendation.  For the reasons that follow, it is recommended

that the Petition should be denied with prejudice and dismissed without an evidentiary hearing.

### I.    FACTS AND PROCEDURAL HISTORY[2]

      On October 25, 2004, following a jury trial before the Honorable Willis W. Berry,

Jr., Petitioner was found guilty of three counts of aggravated assault, three counts of attempted

---

[1]    The Petition for Writ of Habeas Corpus (Docket No. 1) was filed on November 15, 2011. Petitioner's Brief in Support of Petition for Habeas Corpus Relief was also filed on November 15, 2011.  <u>See</u> Docket No. 1.

[2]    This information is taken from the Petition for Writ of Habeas Corpus and memorandum in support thereof, the Response thereto, and the attachments to those pleadings.  In addition, this Court ordered and reviewed the state court record pertaining to this matter.  The information contained in the state court record has been considered and incorporated into this Report and Recommendation.

murder, and one count each of firearms not to be carried without a license, carrying firearms on

public streets or public property in Philadelphia, persons not to possess firearms, possessing

instruments of crime, and recklessly endangering another person.[3]  On February 8, 2005,

Petitioner was sentenced to an aggregate term of 15 to 30 years of incarceration.  Petitioner did

not pursue his right to a direct appeal.

On August 4, 2005, Petitioner retained private counsel who filed a petition under

the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. § 9541, et seq., seeking

reinstatement of Petitioner's direct appeal rights *nunc pro tunc*.  Petitioner's direct appeal rights

were reinstated on January 12, 2006 and an appeal was filed on January 30, 2006.  In so doing,

---

[3]      The Superior Court set forth the following relevant facts and procedural history:

> [Petitioner's] convictions stem from his shooting Luis Andjar on May 4, 2003 in
> the city of Philadelphia.  At approximately 9:50 p.m., at the corner of Sixth
> Street and Erie Avenue[], 15 year old Andjar was walking south on Sixth Street
> toward Allegheny Avenue with his step-brother Carlos Colon, and Thomas
> Franco, when a tan-colored BMW pulled up at the corner of [S]ixth and Erie.
> [Petitioner] got out of the passenger side, dressed in a brown "Akademiks"
> sweatshirt, walked across Erie Avenue, and began firing on the three men.
> Colon and Franco began running immediately, and ducked behind the parked
> cars on Sixth Street, but complainant was shot in the neck, and fell to the ground.
> [Petitioner] got back into the car, and fled the scene, while complainant's brother
> Jose Oquendo, who had been talking with Thomas Franco over a walkie-talkie
> up until the shooting, arrived from his apartment at 722 Erie Avenue, and began
> to administer First Aid to complainant within the next five minutes.  Police
> arrived at the scene a few minutes later, and transported complainant to Temple
> University Hospital.  Thomas Franco was transported to the intersection of C
> Street and Wyoming Avenue, where he positively identified [Petitioner] as the
> shooter.
>
> Thomas Franco, who was a close friend of the Ferreras family, testified for the
> Commonwealth that the shooting arose over Oquendo selling drugs in front of
> [Petitioner's] aunt's house earlier that morning.  Oquendo had also threatened
> [Petitioner's] brother Christopher, when asked to leave the property.  On direct,
> Franco contradicted his sworn statement identifying [Petitioner] as the shooter
> with the testimony of a third male actually shooting complainant.  The jury found
> this testimony to be incredulous, and convicted [Petitioner] of all charges.

Commonwealth v. Ferreras, 947 A.2d 824 (Pa. Super. 2008); Response, Exhibit A at 1-2 (citations omitted).

Petitioner briefed the following issues for the Superior Court's consideration:

> 1.    Was there an instance of judicial impropriety when the trial court asked questions during the cross examination of witnesses and repeatedly made objections on behalf of the prosecution?

> 2.    Was there an instance of prosecutorial misconduct when the Prosecution asked a witness about the [Petitioner's] nickname for the sole purpose of linking him to the inadmissible hearsay statements revealed by an earlier witness?

> 3.    Was there an instance of judicial impropriety where the trial court repeatedly made objections on behalf of the prosecution, but did nothing to protect the [Petitioner] from prejudice after the Prosecutor elicited testimony about [Petitioner's] nickname to link him to inadmissible hearsay statements revealed by an earlier witness?

Commonwealth v. Ferreras, 947 A.2d 824 (Pa. Super. 2008) (table); Response, Exhibit A at 3.

By memorandum decision filed January 29, 2008, the Superior Court rejected Petitioner's claims, and affirmed the judgment of sentence of the trial court.  Commonwealth v. Ferreras, 947 A.2d 824 (Pa. Super. 2008) (table); Response, Exhibit A.  Petitioner did not seek discretionary review by the Pennsylvania Supreme Court.

On March 3, 2008, Petitioner timely filed a counseled PCRA petition raising the following issues:

> Trial counsel was ineffective when he failed to preserve [Petitioner's] appeal rights by objecting to the judicial impropriety when the trial court asked questions during the cross examination of witnesses and repeatedly made objections on behalf of the prosecution.

> Trial counsel was ineffective when he failed to preserve [Petitioner's] appeal rights by objecting to the prosecutorial

3

> misconduct when the Prosecution asked a witness about the [Petitioner's] nickname for the sole purpose of linking him to the inadmissible hearsay statements revealed by an earlier witness.

> Trial counsel was ineffective when he failed to preserve [Petitioner's] appeal rights by objecting to the instance of judicial impropriety where the trial court repeatedly made objections on behalf of the prosecution, but did nothing to protect the [Petitioner] from prejudice after the Prosecutor elicited testimony about [Petitioner's] nickname to link him to inadmissible hearsay statements revealed by an earlier witness.

See State Court Record - Petition for Relief Under the Post-Conviction Relief Act received March 3, 2008; Response, Exhibit B at 2.

On September 3, 2008, counsel filed an amended PCRA petition adding the following issues:

> Petitioner's counsel failed to object to highly prejudicial hearsay testimony.

> Defense counsel failed to request that limiting instructions be given to the jury to counter prejudicial inadmissible testimony.

See State Court Record - Memorandum of Law to Amended Petition for Relief Under the Post-Conviction Relief Act received September 3, 2008. The Commonwealth's Motion to Dismiss was filed on January 7, 2009.

The PCRA court notified Petitioner of its intent to dismiss the petition without a hearing on July 8, 2009 noting that the issues raised were without merit. See PA. R. CRIM. P. 907; State Court Record. The PCRA court subsequently dismissed the petition on November 30, 2009. Response, Exhibit C at 3; State Court Record.

4

On December 29, 2009, counsel for Petitioner appealed to the Superior Court, raising the following issues for review:

> 1.    Whether trial counsel was constitutionally ineffective, justifying relief under 42 Pa.C.S. § 9541 et. seq when he failed to object to the trial judge's protracted and inappropriate questioning of witnesses, inappropriate discrediting comments, coaching of the Assistant District Attorney, and other conduct constituting departure from the clear line of judicial duty to at all times remain an impartial arbiter.

> 2.    Whether trial counsel was constitutionally ineffective, justifying relief under 42 Pa.C.S. § 9541 et. seq when he failed to object to the Assistant District Attorney['s] conduct of offering inadmissible hearsay evidence to link the [Petitioner] with earlier elicited inadmissible hearsay testimony for the sole purpose of prejudicing [Petitioner].

Commonwealth v. Ferreras, 23 A.3d 575 (Pa. Super. 2010) (table); Response, Exhibit C at 3-4, Exhibit D at 9.  The Superior Court affirmed the PCRA court on December 10, 2010.  Id.

Thereafter, Petitioner sought reargument, which was denied on February 15, 2011.

Commonwealth v. Ferreras, 2011 Pa. Super. LEXIS 94 (Pa. Super. Feb. 15, 2011).  A petition for allowance of appeal was subsequently filed in the Pennsylvania Supreme Court.  The Supreme Court declined review on August 2, 2011.  Commonwealth v. Ferreras, 26 A.3d 482 (Pa. 2011) (table).

Petitioner filed the instant pro se Petition for Writ of Habeas Corpus and Brief in Support of Petition for Habeas Corpus Relief on November 15, 2011.  On November 28, 2011, this case was referred by the Honorable Jan E. DuBois for preparation of a Report and Recommendation.  The Response to the Petition was filed February 29, 2012.

The Petition before this Court asserts the following issues:

>(1) TRIAL COUNSEL WAS INEFFECTIVE WHEN HE FAILED
>TO PRESERVE PETITIONER'S APPEAL RIGHTS BY
>OBJECTING TO THE JUDICIAL IMPROPRIETY WHEN THE
>TRIAL COURT ASKED QUESTIONS DURING THE CROSS-
>EXAMINATION OF WITNESSES AND REPEATEDLY MADE
>OBJECTIONS ON BEHALF OF THE PROSECUTION;

>(2) TRIAL COUNSEL WAS INEFFECTIVE WHEN HE FAILED
>TO PRESERVE PETITIONER'S APPEAL RIGHTS BY
>OBJECTING TO THE PROSECUTORIAL MISCONDUCT
>WHEN THE PROSECUTION ASKED A WITNESS ABOUT
>THE PETITIONER'S NICKNAME FOR THE SOLE PURPOSE
>OF LINKING HIM TO THE INADMISSIBLE HEARSAY
>STATEMENTS REVEALED BY AN EARLIER WITNESS; and

>(3) TRIAL COUNSEL WAS INEFFECTIVE WHEN HE FAILED
>TO PRESERVE PETITIONER'S APPEAL RIGHTS BY
>OBJECTING TO THE INSTANCE OF JUDICIAL
>IMPROPRIETY WHERE THE TRIAL COURT REPEATEDLY
>MADE OBJECTIONS ON BEHALF OF THE PROSECUTION,
>BUT DID NOTHING TO PROTECT THE DEFENDANT FROM
>PREJUDICE AFTER THE PROSECUTOR ELICITED
>TESTIMONY ABOUT PETITIONER'S NICKNAME TO LINK
>HIM TO INADMISSIBLE HEARSAY STATEMENT
>REVEALED BY AN EARLIER WITNESS.

See Petition at 9.  Although Petitioner has styled his Petition as asserting three grounds for relief,

a review of his brief in support thereof makes it clear that he is actually asserting two grounds for

relief.  Petitioner states in his brief that "trial counsel's deficient performance was his failure to

preserve the issues for appeal" and then refers the Court to his second and third argument.  See

Brief[4] at 5.

_____

[4]      All citations to "Brief" in this Report and Recommendation are references to the Brief in Support
of Petition for Habeas Corpus Relief filed by Petitioner in conjunction with his Petition for Writ of Habeas Corpus
on November 15, 2011.  See Docket No. 1.

Respondents deny that Petitioner is entitled to a grant of the Petition because they claim that his allegations are either procedurally defaulted or without merit.  Thus, Respondents contend that Petitioner's application should be dismissed with prejudice.

## II.   STANDARD OF REVIEW

### A.   HABEAS CORPUS PETITIONS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that a writ of habeas corpus for a person serving a state court sentence shall not be granted unless (i) the state court's resolution of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" and (ii) the claim is exhausted.[5]  See 28 U.S.C. § 2254(d)(1); Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002); Berryman v. Morton, 100 F.3d 1089, 1103 (3d Cir. 1996).  "As long as the reasoning of the state court does not contradict

---

[5]      Exhaustion requires that the claims have been presented at all available levels of the state judicial system before being presented in a habeas corpus petition. See Anderson v. Harless, 459 U.S. 4, 7 (1982). If a petition's claims have not been exhausted, and a petitioner is time-barred from presenting those claims in state court, the claims are procedurally defaulted and will not be reviewed on the merits. 28 U.S.C. § 2254(b)(1)(A); see O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

However, a procedurally defaulted claim may still succeed where a petitioner can show either (i) cause for the default and actual prejudice, or (ii) that the failure to consider the claim will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 749 (1991). Cause exists when a petitioner demonstrates "some objective factor external to the defense impeded efforts to comply with the State's procedural rule." Slutzker v. Johnson, 393 F.3d 373, 381 (3d Cir. 2004) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)); Cristin v. Brennan, 281 F.3d 404, 412 (3d Cir.), cert. denied, 537 U.S. 897 (2002) (quoting Coleman, 501 U.S. at 753). Prejudice means that the alleged error worked to the petitioner's actual and substantial disadvantage. United States v. Rodriguez, 153 F. Supp. 2d 590, 594 (E.D. Pa. 2001) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).

A fundamental miscarriage of justice occurs if a petitioner presents new evidence and shows that "it is [now] more likely than not that no reasonable juror would have convicted him." Schlup v. Delo, 513 U.S. 298, 327 (1995); Keller v. Larkins, 251 F.3d 408, 415-416 (3d Cir. 2001). The burden is on the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup, 513 U.S. at 327.

relevant Supreme Court precedent, AEDPA's general rule of deference applies." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002), Woodford, 537 U.S. 19.

An objectively unreasonable application does not require merely that a state court's decision be erroneous or incorrect, but also that it be unreasonable. Williams v. Taylor, 529 U.S. 362, 407 (2000). Clearly established federal laws are the holdings, not the dicta of the Supreme Court. Id. at 390.

## B.    INEFFECTIVE ASSISTANCE OF COUNSEL

Claims for ineffectiveness of counsel are governed by Strickland v. Washington, 466 U.S. 668 (1984).[6] Under Strickland, counsel is presumed effective, and to prevail on an ineffectiveness claim, a petitioner must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Given this presumption, a petitioner must first prove that counsel's conduct was so unreasonable that no competent lawyer would have followed it, and that counsel has "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. In addition, a petitioner must prove prejudice. In order to do so, the petitioner must demonstrate that "counsel's errors were so serious as to deprive [petitioner] a fair trial, a trial whose result is reliable." Id. Thus, a petitioner must show a reasonable probability that, but for counsel's

---

[6]     In Harrington v. Richter, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011), the United States Supreme Court reaffirmed the continued applicability of the Strickland standard in federal habeas corpus cases. See also Premo v. Moore, 131 S. Ct. 733, 178 L. Ed. 2d 649 (2011).

"unprofessional errors, the result of the proceeding would have been different. A reasonable probability is sufficient to undermine confidence in the outcome." Id. at 694. This determination must be made in light of "the totality of the evidence before the judge or jury." Id. at 695.

The United States Court of Appeals for the Third Circuit has cautioned that "[o]nly the rare claim of ineffectiveness should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." Beuhl v. Vaughn, 166 F.3d 163, 169 (3d Cir.), cert. denied, 527 U.S. 1050 (1999) (quoting U.S. v. Gray, 878 F.2d 702, 711 (3d Cir. 1989)). Under the revised habeas corpus statute, such claims can succeed only if the state court's treatment of the ineffectiveness claim is not simply erroneous, but objectively unreasonable as well. Berryman v. Morton, 100 F.3d 1089, 1103 (3d Cir. 1996). Recently, the Supreme Court acknowledged that "[s]urmounting Strickland's high bar is never an easy task." Premo v. Moore, 131 S. Ct. 733, 739 (2011) (quotation omitted). The Court explained that the relevant "question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." Id. at 740 (citing Strickland, 466 U.S. at 690).

Petitioner must show not only that counsel's conduct was improper, but also that it amounted to a constitutional deprivation. Petitioner must also show that the prosecutor's acts so infected the trial as to make his conviction a denial of due process. Greer v. Miller, 483 U.S. 756, 765 (1987)(citation omitted). Petitioner must show that he was deprived of a fair trial. Smith v. Phillips, 455 U.S. 209, 221 (1982); Ramseur v. Beyer, 983 F.2d 1215, 1239 (3d Cir. 1992), cert. denied, 508 U.S. 947 (1993) (citations omitted) (stating court must distinguish between ordinary trial error, and egregious conduct that amounts to a denial of due process).

9

Where the state court has already rejected an ineffective assistance of counsel

claim, a federal court must defer to the previous decision, pursuant to 28 U.S.C. § 2254(d)(1).

> If a state court has already rejected an ineffective-assistance claim,
> a federal court may grant habeas relief if the decision was "contrary
> to, or involved an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the United
> States."  28 U.S.C. § 2254(d)(1).  Where the state court's
> application of governing federal law is challenged, it must be
> shown to be not only erroneous, but objectively unreasonable.

Yarborough v. Gentry, 540 U.S. 1, 4, 124 S. Ct. 1 (2003) (*per curiam*) (citations omitted).  The

Supreme Court recently elaborated on this standard:

> Establishing that a state court's application of Strickland was
> unreasonable under §2254(d) is all the more difficult.  The
> standards created by Strickland and § 2254(d) are both "highly
> deferential," id., at 689; Lindh v. Murphy, 521 U.S. 320, 333 n. 7,
> 117 S. Ct. 2059 . . . , and when the two apply in tandem, review is
> "doubly" so, Knowles, 556 U.S. at 123, 129 S. Ct. at 1420.  The
> Strickland standard is a general one, so the range of reasonable
> applications is substantial.  556 U.S. at 123, 129 S. Ct. at 1420.
> Federal habeas courts must guard against the danger of equating
> unreasonableness under Strickland with unreasonableness under §
> 2254(d).  When § 2254(d) applies, the question is not whether
> counsel's actions were reasonable.  The question is whether there
> is any reasonable argument that counsel satisfied Strickland's
> deferential standard.

Premo, 131 S. Ct. at 740 (citations omitted).

III.   **DISCUSSION**

A.   **Whether Trial Counsel Was Ineffective for Failing to Object to the Prosecutorial Misconduct When the Prosecution Asked a Witness about the Petitioner's Nickname for the Sole Purpose of Linking Him to the Inadmissible Hearsay Statements Revealed by an Earlier Witness.**

Petitioner contends that his trial counsel was constitutionally ineffective because he did not object when the prosecutor elicited testimony by Tomas Franco ("Franco") that he knew Petitioner by the nickname "Carleto."  Petitioner avers that the prosecutor's elicitation of that testimony was an improper attempt to take advantage of prior testimony by Luis Andjar ("Andjar"), to which the trial court sustained an objection on hearsay grounds.  See Petition at 9, Brief at 6-8.  Respondents assert that this claim is procedurally defaulted.  Although they may be correct, we will, nonetheless, determine this claim by evaluating it on the merits.[7]

During direct examination by the prosecution, Andjar testified that, immediately before the shooting began, he became afraid thinking that something was going to happen. Transcript, 10/20/2004, at 52-56.  The prosecutor asked Andjar, "What did you see that made you afraid?"  Transcript, 10/20/2004, at 53.  Andjar replied, albeit unresponsively, that he became afraid because Franco said to him, "Carleto is in back of you; Carleto is in back of you."

_____

[7]   The United States Supreme Court in Martinez v. Ryan, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012), created a narrow exception to Coleman v. Thompson, 501 U.S. 722, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). Coleman established the rule that attorney error in post-conviction collateral proceedings does not constitute cause to excuse procedural default.  Martinez provides an exception to that rule by holding that ineffective assistance of counsel at initial-review collateral proceedings may establish cause to excuse procedural default of a claim of ineffective assistance at trial.  The Court in Martinez reasoned that in situations where the first occasion to raise a claim of ineffective assistance at trial is in a collateral proceeding and an attorney errs, it is likely that no state court at any level will hear the prisoner's claim.  "And if counsel's errors in an initial-review collateral proceeding do not establish cause to excuse the procedural default in a federal habeas proceeding, no court will review the prisoner's claims."  Martinez, 132 S.Ct. at 1316.  In an abundance of caution, and to the extent that Petitioner avers that PCRA counsel was ineffective in presenting this claim in a proper fashion, we will address Petitioner's first claim on the merits.

Id.  Petitioner's trial counsel objected and the trial court told Andjar, "Don't tell us what [Franco] said."  Id.

Later, on direct examination of Franco, the prosecutor asked whether Franco knew Petitioner by another name.  Transcript, 10/20/2004, at 153.  Franco testified that he know Petitioner as "Carleto," and maintained that, "everybody know him by Carleto."  Id. at 154. Petitioner's trial counsel did not pose an objection to the prosecutor's question, or to Franco's answer.  Petitioner avers that the testimony about his nickname was not relevant to any issue in the case, but instead was elicited solely for the purpose of linking him to the inadmissible hearsay statement of Andjar.  Brief at 8.

The Superior Court has already determined that Petitioner's objection to the prosecutor's question concerning his nickname lacks merit as a matter of state law. Commonwealth v. Ferreras, 23 A.3d 575 (Pa. Super. 2010) (table); Response, Exhibit C at 6. Petitioner cannot re-litigate this determination on habeas review.  Wilson v. Corcoran, 131 S. Ct. 13, 16 (2011) (quoting Estelle v. McGuire, 502 U.S. 62, 67 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990) ("[I]t is not the province of a federal habeas court to re-examine state-court determinations on state-law questions")).

As correctly noted by Respondents, the prosecutor's question only violated Petitioner's federal rights if it was improper and "so infected the trial with unfairness as to make the resulting conviction a denial of due process" in light of the entire proceeding.  Darden v. Wainwright, 477 U.S. 168, 179-181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).  We find that the prosecutor's question to Franco was not improper, and conclude

that it had no significant effect on the trial's outcome.  Accordingly, we further conclude that trial counsel was not ineffective for failing to object to a meritless claim.

As Respondents point out, Franco told police in a sworn police statement just hours after the shooting that the shooter was named "Carlos."  Transcript, 10/20/2004 at 125.  Therefore, it follows that when the prosecutor asked whether Franco knew "Charles Ferreras by another name," the prosecutor was just attempting to verify that Franco was referring to Petitioner in his police statement.  Transcript, 10/20/2004, at 125, 153-154.  It was necessary for the jury to understand who Franco was talking about when he told police that "Carlos" was the shooter.  Franco's reply of "Carleto" did not give counsel a valid basis for objecting to the prosecutor's question.  See Jackson v. Carroll, 161 Fed. Appx. 190, 194 (3d Cir. 2005) (non-precedential) (counsel had no basis for requesting mistrial based on inadmissible testimony that was unresponsive to prosecutor's question).

Moreover, the reference to "Carleto" was not prejudicial in any significant way, because Petitioner did not dispute this nickname, nor did he dispute that he was present when the shooting took place, or that he fired a gun at the victims.[8]  Even if Petitioner had disputed his nickname, there is no possibility that an objection to Franco's isolated identification of Petitioner as "Carleto" would have made a difference in the trial's result because of the overwhelming evidence presented.  Andjar's testimony, Franco's statements to police immediately afterward,

---

[8]      In a sworn statement Petitioner gave police just hours after the shooting, he maintained he walked toward Franco, Andjar, and Jose Oquendo ("Oquendo") seconds before the shooting began, that Franco and Oquendo suddenly turned and began shooting guns at him, and that he "grabbed" a gun from his friend "Richie Rich" and shot it.  See State Court Record, Philadelphia Police Department Arrest Report and Investigation Interview Record dated May 5, 2003; Transcript, 10/21/2004, at 11-19.  At trial, Petitioner relied on that statement, and argued that he shot at Franco and Oquendo in self-defense. Transcript, 10/22/2004, at 10-11, 21-22.

and ballistics evidence made it clear that Petitioner had attempted to gun down Andjar, Franco, and Carlos Colon, and that he did so alone and without any legitimate justification.[9]

In the present case, the record demonstrates that counsel cannot be deemed ineffective for failing to object to a meritless claim.  Accordingly, we conclude that Petitioner has not identified any decision of the trial court or the appellate court which is contrary to, or an unreasonable application of, Sixth Amendment jurisprudence.  Petitioner, therefore, does not meet his burden of proving ineffective assistance of counsel on this claim.

**B.      Whether Trial Counsel Was Ineffective for Failing to Object to Judicial Impropriety When the Trial Court Asked Questions During the Cross-examination of Witnesses and Made Objections on Behalf of the Prosecution.**

Petitioner contends that his trial counsel was constitutionally ineffective because he did not object when the trial court posed questions to Tomas Franco, and he did not object when the trial court suggested that the prosecutor object to certain testimony by Franco on cross-examination.  See Petition at 9, Brief at 9-18.  In dismissing this claim of ineffectiveness, the PCRA court noted as follows:

> [Petitioner] argued on appeal that the Court abused its discretion in numerous instances throughout the trial.  That argument was found to be without merit and judgment was affirmed.  A trial judge has the inherent right and, at times, the duty to question witnesses to

---

[9]      According to Andjar, the only person he saw wield a gun was a man who got out of the passenger side of a parked BMW, pulled a hood over his face, approached with his head down, and fired around eight gunshots, including one that sliced through Andjar's face.  Transcript, 10/20/2004, at 53-59, 76.  A police officer who responded to the scene testified that, minutes after Andjar was shot, Franco picked Petitioner as the gunman out of a sequential show-up of four men who had been stopped in a BMW just blocks from the shooting.  Transcript, 10/20/2004, at 84-87.  In a signed, sworn statement Franco gave police less than two hours after the incident, he told police that Petitioner was the only person with a gun at the scene, and that he fired "more than five" gunshots toward them (and hit Andjar) because of an argument Franco had with Petitioner's brother earlier that night.  Transcript, 10/21/2004, at 22, 24-28.  A ballistics expert testified that all seven of the fired cartridge casings recovered from the crime scene were fired from the same gun.  Transcript, 10/21/2004, at 55-59.

clarify existing facts and to elicit new information.  When these are the objectives of the questioning and, when the questioning is not unduly protracted or conducted in a biased manner, the trial judge's discretion in interrogating witnesses will not be considered error. Commonwealth v. Lanza, 228 Pa. Superior Ct. 300, 323 A.2d 178 (1974).

This Court acted properly when eliciting information from Commonwealth witness [Tomas] Franco during both direct and cross examination, (N.T. 10/20/04, p. 94-154) because although the Court did not grant Commonwealth's motion to treat the witness as hostile, it was clear to this Court that he was becoming argumentative and very agitated towards the Commonwealth.

.    .    .

The Court asked questions in order to keep both the witness and the Commonwealth on task, and to help the jury make a determination as to the facts of the case, whether it was asking witness Luis Andjar to distinguish the distance from the man who shot him, by using relative objects present in the courtroom (N.T. 10/20/04 p. 57), or asking him to clarify the physical movement of the shooter with hand motions (N.T. p. 71), or asking him to clarify how many shots her heard fired (N.T. p. 76), or to spell the[] brand name on the shooter's sweatshirt (N.T. p. 78).  During witness [Tomas] Franco's testimony, the Court asked him to clarify his answers when he was unclear in his testimony - when trying to establish relative distances between himself and the shooter (N.T. p. 100), or describing for the jury the street name for marijuana as "tree" (N.T. p. 109).  None of these questions were given in a biased or prejudicial manner to [Petitioner], and were within this Court's discretion. [Petitioner's] argument was without merit, and trial counsel was not ineffective for failing to object to the Court's questions.

PCRA Court Opinion - May 18, 2010; Response, Exhibit B at 2-3.

In addition, with respect to Petitioner's claim that the trial court improperly made objections on behalf of the prosecution, the PCRA Court again concluded that the claim was

meritless, by stating as follows:

> Finally, the Court sustained another Commonwealth objection to hearsay testimony elicited from Franco during cross-examination:
>
>> By [Counsel]:
>>
>> Q:      You subsequently learned that he thought - Charles Ferreras thought that you were Jose Oquendo?
>>
>> A:      That he thought I was him.
>>
>> Q:      When you were firing?
>>
>> The Court:      You object to that?
>>
>> [Prosecutor]:   I Object, Your Honor.
>>
>> The Court:      Sustained.
>>
>> (N.T. p. 174)
>
> During those exhaustive two hours of Franco's testimony, this Court used its discretion in making sure both parties' objections were preserved for the record, making any argument that the [Petitioner] was prejudiced by the Court['s] exclusion of inadmissible testimony, or by trial counsel for failing to object to such exclusions, specious at best.

PCRA Court Opinion - May 18, 2010; Response, Exhibit B at 5.  The Superior Court affirmed, and specifically concluded that Petitioner's ineffective assistance of counsel claims lack arguable merit.  Commonwealth v. Ferreras, 23 A.3d 575 (Pa. Super. 2010) (table); Response, Exhibit C at 6.

Petitioner asserts that the trial court improperly interrupted his trial counsel during his cross-examination of Franco with respect to the following exchange:

> Q.    The question was you were angry at the time, because you thought Charles Ferreras had been shooting at you; is that right?
>
> A.    Yes.
>
> Q.    That's what made you angry, right?
>
> A.    Yes.
>
> Q.    Later you realized that that was only because you were shooting, and he thought you were shooting at him?
>
> A.    Yes.
>
> Q.    When, in fact, you were shooting at Richie Rich?
>
> The Court:    Wait a minute. This is getting out of line.
>
> [Prosecutor]:  I object to leading.
>
> [Counsel]:    I'm allowed to lead on cross-examination.
>
> The Court:    I know you can, but sometimes you are misleading.

Transcript, 10/20/2004, at 168-169.

As correctly noted by Respondents, the record indicates that the trial court interrupted trial counsel because he attempted to elicit testimony by Franco regarding what

Franco allegedly later "realized" about Petitioner's reasons for shooting at him, in an effort to show that Petitioner shot at Franco in self-defense.  Such testimony was premised on either inadmissible hearsay or speculation by Franco.  See Comment to Pa. R. Evid. 602 (witness may not testify to the truth of the statement if he does not have personal knowledge of the truth of the statement).  Petitioner had no right under state law to present that testimony to the jury, and he has not cited any federal authority evidencing such a right.  See, e.g., United States v. Snodgrass, 635 F.3d 324, 329 (7th Cir. 2011) (denying defendant's proffer of hearsay testimony regarding motive of defendant's landlord to accuse defendant that was not based on personal knowledge of events).

Further, as noted by the PCRA court, trial judges have broad discretion to question witnesses, and are often obligated to question witnesses in order to clarify confusing testimony.  United States v. Green, 544 F.2d 138, 147 (3d Cir. 1976); Commonwealth v. Carson, 913 A.2d 220, 249 (Pa. 2006) (normally questioning should be left to counsel, but judge may be obligated to ask questions to elucidate absurd or confusing testimony).  In this matter, Franco recanted his sworn statement to police, gave an incredulous explanation for his recantation, and defense counsel's leading questions did not make Franco's account any clearer.[10]  Given those circumstances, it was the court's duty to ensure that Franco's testimony was comprehensible to the jury.  See Commonwealth v. Roldan, 572 A.2d 1214, 1215-1216 (Pa. 1990) (trial judge

---

[10]     Besides telling the jury an entirely different version of the shooting than the one he shared with police, Franco was frequently argumentative with the prosecutor, and repeatedly admonished the prosecutor for interrupting him. See, e.g., Transcript, 10/20/2004, at 109-110, ("You're always objecting. Chill, Fall back."), 111 ("Oh you are frustrating me, man. I'm talking morning time."); 114 ("That's none of your business right now."). This often required the trial court to interrupt the prosecutor and pose questions to Franco itself. See, e.g., Transcript, 10/20/2004, at 94, 100, 103, 109-110, 111.

"should not leave unasked or unanswered questions that center the matter or amplify relevant testimony").

Based on this Court's review of the trial transcript, including the trial court's questioning of Petitioner's brother, Christopher Ferreras, we conclude that the trial court's questions were neutral, and generally open-ended.  See Transcript, 10/20/2004 at 169-173; Transcript, 10/21/2004 at 94-95.  We agree with Respondents in that the trial court's questions allowed the witnesses to tell their story, in a way that specifically set forth who was doing what, when they were doing it, and where they did it, based on what they alleged occurred.  As the Superior Court recognized, Petitioner's trial counsel had no legal basis or tactical reason to object to the trial court's  line of inquiry.  Commonwealth v. Ferreras, 23 A.3d 575 (Pa. Super. 2010) (table); Response, Exhibit C at 6.

Petitioner also contends that the trial court acted improperly by prompting the prosecutor to object when trial counsel resumed his cross-examination of Franco:

> Q:      You subsequently learned that he thought – Charles
>          Ferreras thought that you were Jose Oquendo?
>
> A:      That he thought I was him.
>
> Q:      When you were firing?
>
> The Court:      You object to that?
>
> [Prosecutor]:   I object, your honor.
>
> The Court:      Sustained.

Transcript, 10/20/2004, at 173-174.

Again, we conclude that the trial court took the appropriate action.  As Respondents have noted, trial counsel was attempting to elicit testimony that Franco later "learned" Petitioner thought Franco was shooting at him, and he was offering that testimony to prove the truth of the matter asserted, i.e. that Petitioner thought he was shooting at Jose Oquendo in self-defense, rather than at Franco.  Trial counsel's question, to which the prosecutor had previously objected, Transcript, 10/20/2004, at 169, was just another effort to present inadmissible evidence to the jury.  Despite Petitioner's assertions, no provision of the federal Constitution guaranteed him the right to present speculative testimony or inadmissible hearsay, with or without a contemporaneous objection from the prosecutor.  Again, based on our review of this claim, we find that the Superior Court reasonably concluded that trial counsel had no basis for objecting to the trial court's action.  Commonwealth v. Ferreras, 23 A.3d 575 (Pa. Super. 2010) (table); Response, Exhibit C at 6-7.

The record demonstrates that counsel cannot be deemed ineffective for failing to object to meritless claims.  Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004) (counsel cannot be ineffective for failing to raise meritless state law objection), cert. denied, 543 U.S. 1093 (2005).  Accordingly, we again conclude that Petitioner has not identified any decision of the trial court or the appellate court which is contrary to, or an unreasonable application of, Sixth Amendment jurisprudence.  Petitioner, therefore, does not meet his burden of proving ineffective assistance of counsel.

For all of the foregoing reasons, I make the following:

## **RECOMMENDATION**

AND NOW, this    10th    day of May, 2012, IT IS RESPECTFULLY
RECOMMENDED that the instant Petition for Writ of Habeas Corpus filed pursuant to 28
U.S.C. § 2254 should be DENIED with prejudice and DISMISSED without an evidentiary
hearing.  There is no probable cause to issue a certificate of appealability.

The Petitioner may file objections to this Report and Recommendation.  See Local
Civ. Rule 72.1.  Failure to timely file objections may constitute a waiver of any appellate rights.


BY THE COURT:


*Henry S. Perkin*
HENRY S. PERKIN
UNITED STATES MAGISTRATE JUDGE